UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
DAVID ROSEN AND SHARON ROSEN,

              Plaintiffs,

    -against-

KALMAN SPORN,

              Defendant.

------------------------------------------------------------ x

Civil Action No. 1:22-cv-5485

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

Plaintiffs David Rosen and Sharon Rosen (collectively, "Plaintiffs" or the "Rosens"), by and through their attorneys, Kasowitz Benson Torres LLP, by way of Complaint against Defendant Kalman Sporn ("Sporn" or "Defendant"), allege as follows:

## INTRODUCTION

1. Sporn took Plaintiffs' money, with promises of legitimate investments, and then misappropriated their money. In classic form, he invented phony opportunities, phony documentation, and phony relationships in order to convince the Rosens to hand over their hard-earned life-savings.

2. Plaintiff David Rosen ("Rabbi Rosen") currently serves as the American Jewish Committee's International Director of Interreligious Affairs, and Director of its Heilbrunn Institute for International Interreligious Understanding. Rabbi Rosen was formerly the chief rabbi of Ireland and has been internationally recognized for his work in the Jewish Community and his commitment to interfaith dialogue. In November 2005, Pope Benedict XVI appointed Rabbi Rosen a Knight Commander of the Order of St. Gregory the Great in recognition of his contribution to Jewish-Catholic reconciliation. In 2010, Queen Elizabeth II made him a Commander of the British Empire for his contributions to interfaith relations, and in March 2016 he was awarded the

Archbishop of Canterbury's Hubert Walter Award for Reconciliation and Interfaith Cooperation. In addition to honorary doctorates, Rabbi Rosen is the recipient of various awards including, the Search for Common Ground Award for Interfaith Dialogue, the Primo Galileo 2000 Award, the Waldzell Institute Life Achievement Award (together with the Dalai Lama and Sheikh Ahmed El Tayeb), the Festival of Faiths' Lifetime Achievement Award, and the Mount Zion Award for Interreligious Understanding. Plaintiff Sharon Rosen, Rabbi Rosen's wife, is the Global Director of Religious Engagement of Search for Common Ground.

3. Defendant Sporn is a conman. He is a self-promoter who holds himself out to the public as a corporate strategist specializing in public affairs, foreign policy and philanthropy. In reality, he is a charlatan. He built up a relationship of trust and confidence with Plaintiffs and took advantage of their kindness and trust by stealing or squandering their money. Sporn's relationship with the Rosens began through the friendship between the parties' families and their ties with the Orthodox Jewish community. This was a relationship of trust, the families spent time together, and Sporn spent time at the Rosens' home in Jerusalem. Sporn represented to the Rosens that he was an experienced and successful financial advisor and investor. The Rosens advised Sporn that they had retirement savings and Sporn represented to the Rosens that he could safely and successfully earn them significant returns on their money using a conservative and creative investment strategy that he was using for his many other clients. Unfortunately, after the Rosens agreed to invest over $500,000 with Sporn, all of his representations proved to be false. Sporn was not a successful investor. Sporn did not have many other clients. Sporn did not invest their funds in a creative or conservative investment strategy. He stole their money. And when they asked for it back, he made up a myriad of excuses as to why he needed more time to return their

money. But he never did. He used it for his own personal benefit and repeatedly lied about it and refused to repay any of it.

## THE PARTIES

4. Plaintiffs David and Sharon Rosen are individuals with a place of residence located at 17 Caspi Street, Jerusalem, 9355420 Israel.

5. Defendant Kalman Sporn is an individual with a place of residence located at 1121 Beach 9th Street, Far Rockaway, New York 11691-4809 and 210 West 70th Street, #302, New York, New York 10023. Sporn is a managing member of Marylebone LLC, a New York limited liability company with a place of business at 154 East 64th Street, 4th Floor, New York, New York 10065. Sporn was recently evicted from his prior residence at 250 West 50th Street, Apartment No. 34L, New York, New York 10019 for failure to pay rent.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as Plaintiffs are domiciled in Israel, Defendant is domiciled in New York, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

7. This Court has personal jurisdiction over the Defendant because he resides or otherwise has sufficient minimum contacts with this District so as to render the Court's exercise of jurisdiction permissible.

8. Pursuant to 28 U.S.C. §1391(b), venue is proper in the United States District Court for the Southern District of New York because Defendant resides in this District and a substantial part of the events giving rise to the claims occurred in this District.

**FACTUAL BACKGROUND**

9. In June 2012, the Rosens conveyed $388,000 to Sporn in reliance on Sporn's representation that he was a successful financial advisor and investor and would invest the funds into legitimate and profitable investment opportunities, such as trusts, bonds, and hedge funds. Sporn represented that he was investing a portion of the funds into a "Cornelius Trust" that he created. Sporn also represented to the Rosens that that he was investing 60% of their investment in secure and safe hedge funds and bonds.

10. On or about July 8, 2013, the Rosens conveyed to Sporn an additional $150,000 in reliance on Sporn's misrepresentation that he would invest the money in three real estate trusts, which would generate a profitable return. In total, the Rosens invested $538,000 (the "Retirement Investment"). Sporn said the investment of the Retirement Investment was locked for 5 years.

11. After the purported five-year investment lock up period, the Rosens had discussions from time to time with Sporn regarding the Retirement Investment and the potential liquidation of a portion or all of the investment.

12. On or about April 2019, Rabbi Rosen met with Sporn to discuss the status and performance of the Retirement Investment, and Sporn assured him that the Retirement Investment was secure and continuing to earn interest. At that time, Sporn told Rabbi Rosen that he would provide an accounting of the Retirement Investment to the Rosens.

13. After not receiving the accounting, on or about May 2, 2019, the Rosens contacted Sporn to inquire as to the status of the Retirement Investment and to get his advice as to whether to withdraw the Retirement Investment or to reinvest it.

14. From May 2019 to October 2020, Sporn deflected the Rosens request for an accounting of the Retirement Investment by making various excuses as to why the accounting was

unavailable. Each time the Rosens spoke with Sporn, he represented that the Retirement Investment was secure and earning interest and available to be withdrawn at any time.

15. On or about January 9, 2020, Rabbi Rosen spoke with Sporn and requested that the Retirement Investment be liquidated and returned to the Rosens. Sporn agreed to do so and promised to process their request.

16. However, Sporn did not return the Retirement Investment to the Rosens. Sporn explained that he was unable to return the Retirement Investment because he was ill and hospitalized but that he would return the Retirement Investment soon thereafter. Due to their relationship with Sporn and his family, the Rosens patiently waited for Sporn to recover from his illness and return their Retirement Investment.

17. On or about May 18, 2020, Sporn told the Rosens that they would have the Retirement Investment and the profits earned returned to them within 48 hours. However, Sporn did not deliver the Retirement Investment to the Rosens in May.

18. From June 2020 through October 2020, Sporn continued to deflect the Rosens' requests for a return of the Retirement Investment and their requests an accounting of the Retirement Investment. He continuously made excuses to the Rosens as to why he was unavailable to speak with them regarding the Retirement Investment and promised to provide an accounting as soon as possible. By the end of October 2020, Sporn stopped responding to the Rosens' inquiries.

19. To date, Sporn has refused to account to the Rosens for the Retirement Investment. He is either unable to, or simply refuses, to explain where the Rosens' Retirement Investment went, why there they are unable to recover any of their Retirement Investment, and why the Retirement Investment did not return a profit.

20. Upon information and belief, Sporn did not employ a conservative and creative investment strategy or invest the Retirement Investment into any hedge funds, bonds, and trusts. Instead, Sporn either made reckless, high risk investments or simply stole the Rosens' Retirement Investment and used their funds for his own benefit and use.

## AS AND FOR A FIRST CAUSE OF ACTION
(Breach of Contract)

21. Plaintiffs restate and reallege the foregoing allegations, which are incorporated by reference as if set forth fully herein.

22. The Rosens and Sporn entered into an agreement whereby Sporn agreed to invest the Rosens' Retirement Investment into legitimate and conservative hedge funds, bonds, and trusts which would return a profit.

23. The Rosens fully performed their obligations under this agreement by conveying $538,000 to Sporn to invest on their behalf.

24. In May 2020 and again in October 2020, Plaintiffs requested that Sporn return the Retirement Investment and any interest and profits, but Sporn did not honor the request.

25. Sporn materially breached the agreement by failing to perform his duties thereunder. Sporn breached the oral contracts by, among other things: (i) failing to invest the Retirement Investment as promised; (ii) failing to return the Retirement Investment; (iii) failing to return the profits from the Retirement Investment; and (iv) by refusing to account for the Retirement Investment.

26. As a result of the breach, the Rosens have sustained damages in an amount to be proven at trial, but in no event less than $538,000 plus interest.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Fraud)

27. Plaintiffs restate and reallege the foregoing allegations of paragraphs 1 through 20, which are incorporated by reference as if set forth fully herein.

28. Sporn made numerous representations of material facts, and failed to disclose material facts to the Rosens. Sporn represented that he was a successful financial advisor and investor and he would and could safely and successfully earn them significant returns on their money using a conservative and creative investment strategy that he was using for his many other clients. He further represented that: (i) all of the investment opportunities were legitimate and profitable; (ii) he created a Cornelius Trust, in which he would invest a portion of the Rosens' Retirement Investment; (iii) he would invest the Rosens' Retirement Investment in secure and safe hedge investments, bonds, and trusts; (iv) he would invest a portion of the Retirement Investment in three real estate trusts; (v) the Rosens' Retirement Investment was unable to be withdrawn for a period of five years; and (vi) the Rosens would receive a profitable return on their Retirement Investment.

29. The foregoing statements were false and misleading at the time they were made and Sporn made these misrepresentations with the knowledge they were false and misleading and with the intent to deceive the Rosens and induce them to give the Retirement Investment to him.

30. Defendant intended to deceive Plaintiffs with the misrepresentations and omissions and induce Plaintiffs to act to their detriment by investing substantial funds with Defendant for a long period of time.

31. Plaintiffs had no knowledge of the falsity of the Defendant's representations and omissions and reasonably relied on the Defendant's misrepresentations to their detriment.

32. In May 2020 and again in October 2020, Plaintiffs requested that Sporn return the Retirement Investment and any interest and profits, but Sporn did not honor the request.

33. Sporn's conduct was wrongful, without justification or excuse and contrary to generally accepted standards of morality.  In addition, his acts were committed with actual malice and/or a wanton and willful disregard of the Rosens' rights and, in light of the parties' relationship, represent unconscionable and unjustifiable conduct.  Moreover, Sporn's conduct harmed the public generally because upon information and belief he directed his misrepresentations regarding his abilities and success as a financial advisor and investment manager not just to the Rosens but to the public at large.

34. As a direct and proximate result of Sporn's fraudulent acts, the Rosens have sustained damages in an amount to be proven at trial, but in no event less than $538,000 plus interest.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Breach of Fiduciary Duty)**

35. Plaintiffs restate and reallege the foregoing allegations of paragraphs 1 through 20, which are incorporated by reference as if set forth fully herein.

36. In June 2012, Sporn agreed to act and serve as the Rosens' financial advisor and investment manager with regard to the retirement savings he agreed to invest on their behalf. During the course of their business dealings, Plaintiffs reposed confidence in Sporn to guide and inform them with respect to the investments and Sporn accepted this trust.  Plaintiffs' trust in Sporn was also founded on the fact that the parties come from the Orthodox Jewish community and had a pre-existing familial relationship.

37. As the Rosens' financial advisor and investment manager, Sporn owed fiduciary duties of care and loyalty to the Rosens.  He was required to refrain from self-dealing and from

taking unfair advantage. He was also required to disclose all material facts and act in the Rosens' best interests.

38. Sporn abdicated and violated his fiduciary duties to the Rosens in connection with the Retirement Investment. Sporn breached his fiduciary duties by, among other things: (i) concealing the fact that the investment opportunities were either fictitious and/or that he had no intent on investing the Retirement Investment into those investments opportunities and no successful investment track record; (ii) not investing the Retirement Investment in safe and secure investments; (iii) misrepresenting the terms and conditions of repayment of the Retirement Investment; (iv) not investing the Retirement Investment in legitimate investment portfolios; and (v) taking the Retirement Investment and any profits and interest for his own personal use.

39. As a direct and proximate result of Sporn's breaches of his fiduciary duties, the Rosens have sustained damages in an amount to be proven at trial, but no less than $538,000 plus interest.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Conversion)

40. Plaintiffs restate and reallege the foregoing allegations of paragraphs 1 through 20, which are incorporated by reference as if set forth fully herein.

41. Defendant received Plaintiffs' funds based on false statements.

42. The funds were earmarked to fund the purchase of specific investments and Plaintiffs were falsely promised an equity interest in the investments.

43. Defendant wrongfully exercised dominion and control over the funds.

44. Despite repeated requests, Defendant has refused to return the funds and has improperly converted them for his own use causing damage to Plaintiffs.

45. As a result, the Rosens have sustained damages in an amount to be proven at trial, but in no event less than $538,000 plus interest.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

46. Plaintiffs restate and reallege the foregoing allegations of paragraphs 1 through 20, which are incorporated by reference as if set forth fully herein.

47. Sporn has unjustly retained cash that rightly belongs to the Rosens by virtue of his wrongful acts and omissions. Retention of the proceeds of the Retirement Investment by Sporn violates fundamental principles of justice, equity and good conscience.

48. Sporn has been unjustly enriched by his receipt of the Retirement Investment that was fraudulently and unjustifiably conveyed to Sporn at the Rosens' expense.

49. Sporn is therefore liable to the Rosens for unjust enrichment.

50. The Rosens seek restitution from Sporn and an order of this Court disgorging all payments, transfers, credit, profit, fees, benefits, dividends, incentives, and other things of value obtained by Sporn as a result of his wrongful conduct.

51. The Rosens have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs David and Sharon Rosen respectfully request that the Court enter as follows:

(1) On the first cause of action, in favor of Plaintiffs and against Defendant for breach of contract, damages in an amount to be determined at trial, but no less than $538,000 plus interest;

(2) On the second cause of action, in favor of Plaintiffs and against Defendant for fraud, damages in an amount to be determined at trial, but no less than $538,000 plus interest plus punitive damages in an amount to be determined at trial;

(3) On the third cause of action, in favor of Plaintiffs and against Defendant for breach of fiduciary duties, damages in an amount to be determined at trial, but no less than $538,000 plus interest;

(4) On the fourth cause of action, in favor of Plaintiffs and against Defendant for conversion, damages in an amount to be determined at trial, but no less than $538,000 plus interest;

(5) On the fifth cause of action, in favor of Plaintiffs and against Defendant for unjust enrichment, damages in an amount to be determined at trial, but no less than $538,000 plus interest;

(6) An award of Plaintiffs' costs, interest, and attorneys' fees; and

(7) Such other and further relief as the Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated: June 28, 2022
New York, New York

KASOWITZ BENSON TORRES LLP

By: */s/ Howard W. Schub*
Howard W. Schub (hschub@kasowitz.com)
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Counsel to Plaintiffs*

11